UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES,

           Plaintiff,

    v.

STEPHEN SILVERMAN, et al.,

           Defendant.

Case No. 18-cr-00533-RS

**ORDER DENYING MOTION TO DISMISS & DENYING MOTION TO TRANSFER**

## I. INTRODUCTION

Defendant Stephen Silverman faces three federal conspiracy charges relating to an alleged black-market prescription drug distribution racket. He now moves to dismiss for lack of venue, or, in the alternative, to have his trial transferred to the Central District of California. Upon careful consideration of the parties' briefing, oral argument of these motions is not warranted, and the hearing previously set for Tuesday, July 20, 2021 is hereby vacated. For the reasons set forth herein, the motions are denied.

## II. BACKGROUND

The Superseding Indictment ("SI") charges four individuals—Silverman, Ovasapyan, Kojoyan, and Papyan (collectively, "defendants")[1]—with three crimes: (i) conspiracy to commit wire fraud, 18 U.S.C. § 1349; (ii) conspiracy to commit laundering of monetary instruments,

---

[1] Of Silverman's three co-defendants, two have entered guilty pleas. The other, Papyan, does not join in the present motions.

18 U.S.C. § 1956(h); and (iii) conspiracy to engage in the unlawful wholesale distribution of drugs, 18 U.S.C. § 371. As the SI alleges, defendants acquired large amounts of prescription drugs from unlicensed suppliers, with a particular emphasis on drugs used in HIV treatment. Defendants then sold the drugs to "retail pharmacies and wholesalers" nationwide. *See* Dkt. 51 at 13. To facilitate these transactions, defendants established a Pennsylvania front company, which provided its customers with the false impression that the company's drugs came from a properly-licensed California source. Relevant here, the SI further alleges that all three charged conspiracies took place "in the Northern District of California and elsewhere"—and more particularly, that "[i]n furtherance of" defendants' criminal efforts, some $57,000 was deposited into a bank account "domiciled in San Mateo, California." *See id.* at 16-18.

## III. DISCUSSION

### A. Motion to Dismiss

Silverman's dismissal argument effectively distills to the notion that venue for conspiracy only lies where the illicit agreement was formed. Under this logic, because the SI does not allege any such formation happened in the Northern District of California, it must be dismissed. Whatever its policy merits, this logic is not the law. In the Ninth Circuit, it is "well settled that venue on a conspiracy charge is proper where the conspiracy was formed *or* where any overt act committed in furtherance of the conspiracy occurred." *United States v. Gonzalez,* 683 F.3d 1221, 1224 (9th Cir. 2012) (emphasis added) (citation omitted). Moreover, in assessing pre-trial motions to dismiss (including motions challenging venue), trial courts "should not consider evidence not appearing on the face of the indictment." *United States v. Jensen* ("*Jensen*"), 93 F.3d 667, 669 (9th Cir. 1996) (internal quotation marks and citation omitted) (reversing the district court). Binding precedent thus makes quick work of Silverman's motion to dismiss. On its face, the SI locates within this district the occurrence of an "overt act [*i.e.*, $57,00 in banking activity] committed in furtherance of" defendants' conspiracies. *See Gonzalez,* 683 F.3d at 1221 (citation omitted). For purposes of venue, that is enough.

Silverman struggles against this outcome by attacking the SI's venue-establishing

content—that is, by attempting to show that the alleged act-in-furtherance either did not occur or, somehow, does not count. Conceding this strategy runs afoul of *Jensen*'s mandate limiting pre-trial review to the four corners of the charging document, he claims "the Supreme Court implicitly overturned *Jensen*" in *United States v. Cabrales,* 524 U.S. 1, 4 (1998). Here too, Silverman is mistaken. To warrant departure from *Jensen*, the *Cabrales* decision would have to be "clearly irreconcilable." *See Miller v. Gammie,* 335 F.3d 889, 893 (9th Cir. 2003); *see also United States v. Robertson,* 875 F.3d 1281, 1291 (9th Cir. 2017) ("The clearly irreconcilable requirement is a high standard. So long as the court can apply . . . [Ninth Circuit] precedent without running afoul of the intervening authority it must do so.") (internal quotation marks and citations omitted).

By any stretch, it is not. In affirming the district court's pre-trial dismissal of two counts on the basis of venue, the *Cabrales* Court emphasized (i) that the counts "d[id] not charge Cabrales with conspiracy," or some other type of "continuing offense," and (ii) that the counts "included no act committed by Cabrales" in the district of indictment. *See* 524 U.S. at 5-7 (internal quotation marks, bracketing, and citation omitted); *see also id.* at 8 (distinguishing *Hyde v. United States,* 225 U.S. 347 (1912), as inapposite because "the counts at issue in this case allege no conspiracy.") Irrespective of its precise contours, *Cabrales* can therefore be read as merely re-stating *Jensen* in terms of the government's obligation in crafting an indictment, rather than the judge's obligation in reviewing one: where the charged crime is not a "continuing offense," the charging document must allege offense conduct in the trial district. Because this reading is a far cry from one revealing clear irreconcilability between the two cases, *Cabrales* cannot save Silverman's motion to dismiss.

### B. Motion to Transfer

Silverman alternatively moves that his trial be transferred to Central District of California pursuant to Federal Rule of Criminal Procedure Rule 21(b). In *Platt v. Minnesota Mining & Manufacturing Co.,* the Supreme Court identified several factors at a court's disposal in adjudicating a Rule 21(b) motion:

(1) location of [the] . . . defendant; (2) location of possible witnesses; (3) location

of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of [the] place of trial; (9) docket condition of each district...involved; and (10) any other special elements which might affect the transfer.

376 U.S. 240, 243-44 (1964) (internal quotation marks and citation omitted). Significantly, "[n]o one of these considerations is dispositive, and it remains for the court to try and strike a balance and determine which factors are of greatest importance." *United States v. Shayota,* 2015 WL 9311922, at *2 (N.D. Cal. Dec. 23, 2015) (internal quotation marks and citation omitted).

Although the defendants all reside in the Central District, trial in this matter will pull in counsel, witnesses, and evidence from the Southern and Northern districts. Given this, and as the government rightly notes, the first seven *Platt* factors are, in the aggregate, roughly neutral—either way, a considerable number of trial participants will be travelling up and down the California coast, to try Silverman for a conspiracy of national scope.[2] The inquiry accordingly turns on factors eight, nine, and ten.

So far as "relative accessibility" is concerned, Silverman's point that Los Angeles is preferable for his family, friends, and support network is of some relevance. More compelling, though, is the government's docket-driven concern that moving Silverman's trial to a new court—after this one has, in the two years since the SI was filed, taken pleas, sentenced one co-defendant, and presided over forfeiture proceedings—will result in substantial judicial inefficiency. Nor, bearing in mind the SI's 2019 filing, does Silverman persuasively account for his especially long delay in seeking transfer, which raises the unwelcome specter of forum shopping. *See United States v. Polizzi,* 500 F.2d 856, 901 (9th Cir. 1974) ("It is proper to require a greater showing of inconvenience when a change of venue is sought late in proceedings.") All told, then, transferring this case, at this juncture, would be inconsistent with the exercise of "sound judicial discretion." *Id.* at 899 (internal quotation marks and citation omitted). As with his motion to dismiss, Silverman's motion to transfer is denied.

---

[2] Silverman concedes his "work will be interrupted by trial in any location[.]" Dkt. 171 at 19.

# IV. CONCLUSION

Consistent with the foregoing, both motions are denied.

**IT IS SO ORDERED**.

Dated: July 15, 2021

RICHARD SEEBORG
Chief United States District Judge